**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**SANJAY SINHA**

**v.**                                  **Criminal No. 1:14cr9-HSO-JCG-1**
                                        **Civil No. 1:17cv337-HSO**

**UNITED STATES OF AMERICA**

**ORDER DENYING DEFENDANT SANJAY SINHA'S MOTION [419] TO
VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255**

BEFORE THE COURT is Defendant Sanjay Sinha's Motion [419] to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28

U.S.C. § 2255. After due consideration of the issues, the record, and relevant legal

authority, the Court is of the opinion that Sinha's Motion [419] should be denied

without an evidentiary hearing.

## I. RELEVANT BACKGROUND

A.   Defendant's Guilty Plea

On February 29, 2014, a grand jury returned an Indictment [3] charging

Defendant Dr. Sanjay Sinha ("Sinha" or "Defendant") with six counts of distributing

various controlled substances in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

The Indictment alleged that Sinha distributed and dispensed controlled substances

to various individuals outside the scope of professional practice. Indictment [3].

1

The Government returned a fourteen-count Superseding Indictment [87] on August 19, 2014, followed by a seventeen-count Second Superseding Indictment [197] on January 21, 2015.  Finally, a grand jury returned the Third Superseding Indictment [254] on April 7, 2015, charging Sinha with forty counts of distributing a controlled substance outside the scope of professional practice.  *See* Third Superseding Indictment [254].

The Court initially appointed Defendant counsel on March 20, 2014.  Order [42].  Shortly thereafter, Sinha retained counsel, attorneys Benjamin Black Alper and Howard Jarrett Weintraub, who were admitted pro hac vice with local counsel Donald J. Rafferty.  Text Order, May 13, 2014.  Over a period of time, the Court granted numerous continuances of the trial date to accommodate Sinha and his retained counsel.  *See* Text Order, April 14, 2014; Text Order, June 2, 2014; Text Order, August 20, 2014.  Defendant's retained counsel later withdrew, at which point the Court granted a thirty-day continuance and Sinha ultimately chose to retain attorneys Christopher E. Smith and G. Morgan Holder.  Tr. [373] at 9; Notice of Attorney Appearance [191] [194].  The Court then granted an almost three-month continuance after new counsel enrolled, followed by another three-month continuance on April 10, 2015.  Minute Entry, January 13, 2015; Text Order, April 10, 2015.

Ultimately, on June 22, 2015, Sinha pled guilty to Count 27 of the Third Superseding Indictment [254], which charged him with distribution of a controlled substance outside the scope of professional practice under 21 U.S.C. § 841(a)(1).

Plea Agreement [291] at 1; Third Superseding Indictment [254] at 10. Specifically,

Count 27 charged Defendant with knowingly and intentionally prescribing a

Schedule IV non-narcotic drug controlled substance, Clonazepam, to Tonie Mattina,

other than for a legitimate medical purpose and in the usual course of professional

practice. 21 U.S.C. § 841(a)(1); Third Superseding Indictment [254] at 10. At the

conclusion of a two-day sentencing hearing held on October 26 and 27, 2015, the

Court sentenced Sinha to sixty months imprisonment followed by three years of

supervised release, as well as a $15,000 fine. Sentencing Tr. [366] at 93-94;

Judgment [354].

Defendant's guilty plea was made pursuant to a Plea Agreement [291] with

the Government, which provided in relevant part that Defendant expressly waived

the following rights:

    a. the right to appeal the conviction and sentence imposed in this case, or
       the manner in which that sentence was imposed, on the grounds set
       forth in Title 18, Unites States Code, Section 3742, or on any ground
       whatsoever, and

    b. the right to contest the conviction and sentence or the manner in which
       the sentence was imposed in any post-conviction proceeding, including
       but not limited to a motion brought under Title 28, United States Code,
       Section 2255 . . .

Plea Agreement [291] at 5-6. At the plea hearing and in the Plea Agreement [291],

Sinha and his attorney declared that the terms of the Plea Agreement were read by

or to Sinha, explained to Sinha by his attorney, understood by Sinha, voluntarily

accepted by Sinha, and agreed to by Sinha. *Id.* at 6; Plea Hearing [328] at 8-9.

Sinha nevertheless filed a direct appeal on November 5, 2015. Notice of Appeal

[355].  The Fifth Circuit held that the Defendant's appeal waiver was knowing and voluntary and dismissed the appeal.  *United States v. Sinha*, 655 F. App'x 1015, 1016-17 (5th Cir. 2016).

B.     Defendant's Motion [419] to Vacate, Set aside, or Correct Sentence by a Person in Federal Custody

Sinha timely filed this Motion [419] under 28 U.S.C. § 2255, on December 4, 2017, raising several grounds.  *See* 28 U.S.C. § 2255(f)(3).  First, Defendant asserts that he was deprived of his right to counsel of his choice in violation of the Sixth Amendment to the United States Constitution (Ground One).  Mot. [419] at 4.  He argues that that the Court "issued an ultimatum that forced [him] with only 5 minutes to choose between trial with 'ineffective' counsel or relinquishing his counsel of choice."  *Id.*

Second, Sinha contends that his later plea was not voluntary and knowing because his counsel "gave erroneous advice and incorrectly modified the proposed 'factual basis' at the plea hearing" (Ground Two).  *Id.* at 6.  He claims that despite no federal or state law requiring a physician with a doctor-patient relationship to perform a re-check physical exam prior to authorizing a prescription refill, his attorney stated in a proposed modification at the plea hearing that Defendant "did not meet with [Tonie Mattina] in the immediate months preceding June - - the subject of Count 27, which would be outside the scope of professional practice for purposes of writing that prescription."  *Id.*

Third, Defendant argues that he was deprived of effective assistance of counsel when his attorney failed to: (1) comprehend the governing law concerning

required examinations between refills of Schedule IV medication; (2) properly investigate the facts of Count 27, Tonie Mattina, and the Government's main witnesses; (3) secure the Government's representation to limit relevant conduct to Count 27; (4) accurately estimate the sentencing guideline range; and (5) proceed to trial with exculpatory evidence (collectively Ground Three). *Id.* at 8. Sinha states that had he been properly advised, he would not have pled guilty and would have proceeded to trial. *Id.*

In a later-filed Affidavit [429], Sinha also claims that his attorneys were ineffective at sentencing and induced his guilty plea with unkept promises. Def.'s Aff. [429] at 8, 10. Finally, Sinha asserts that he was deprived of "true probable cause" when the case agent allegedly erroneously testified to the grand jury that Sinha had not performed any physical exams, and because the indictment "lacked the essential element of the requisite language 'without a legitimate medical purpose'" (Ground Four). *Id.* at 9.

Sinha's trial and appellate counsel have filed affidavits in response to Sinha's Motion [419]. Barrett Aff. [421]; Smith Aff. [422]; Holder Aff. [423]. The Government filed its Response [424] on January 12, 2018. Government's Resp. [424]. The Government's brief Response [424] argues that because of Sinha's appeal waiver, he is barred from collaterally attacking his conviction. *Id.* at 2-3. The Government contends that Sinha has not met his burden of establishing claims of ineffective assistance of counsel. *Id.* at 3-4. Defendant subsequently filed a Rebuttal to the Government's Response [428] and an Affidavit [429] in Support of

his Motion [419] on March 30, 2018.

## II. <u>DISCUSSION</u>

A.  <u>Relevant law</u>

Once finally convicted, there are four narrow and separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).  "[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'"  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)).

Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32.  Relief under § 2255 is therefore reserved for violations of constitutional rights and for a narrow range of injuries which could not have been raised on direct appeal and which, if condoned, would result in a complete miscarriage of justice.  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

Sinha entered a plea of guilty to Count 27 of the Third Superseding Indictment on September 29, 2015, and was sentenced on October 27, 2015.  The

Supreme Court denied certiorari on November 28, 2016. After conviction and

exhaustion of his right to appeal, it is presumed that Defendant now stands fairly

and finally convicted. *Samuels*, 59 F.3d at 528 (internal citation omitted).

B.   Sinha's guilty plea was knowing, intelligent, and voluntary (Ground Two of
     the Motion).

     Defendant asserts that his plea was not knowing, intelligent, and voluntary,

as required by Rule 11 of the Federal Rules of Criminal Procedure. Def.'s Mot. [419]

at 6.[1] "The validity of a guilty plea is a question of law . . . ." *United States v.*

*Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111

F.3d 386, 388 (5th Cir. 1997)). "A plea of guilty is constitutionally valid only to the

extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618

(1998) (citation omitted). Therefore, "[a] guilty plea will be upheld on habeas review

if entered into knowingly, voluntarily, and intelligently." *Hernandez*, 234 F.3d at

255 (quoting *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)).

     Whether a guilty plea was "knowing" turns on whether a defendant

understood the direct consequences of a plea, including the maximum possible

penalty, while "voluntariness" of a plea depends on whether the plea was induced

by threats, misrepresentation, unfulfilled promises, or improper promises. *Id.* at

255, n.3. "[A] plea of guilty entered by one fully aware of the direct consequences of

the plea is voluntary in a constitutional sense unless induced by threats,

misrepresentation, or perhaps by promises that are by their nature improper as

---

[1] On direct appeal, the Fifth Circuit reviewed the record and concluded that "Sinha's appeal
waiver was knowing and voluntary." *Sinha*, 655 F. App'x at 1016-17.

having no proper relationship to the prosecutor's business." *Bousley*, 523 U.S. at 619 (quotation omitted). "To constitute an intelligent act, it must be done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (quotation omitted). The United States Supreme Court has "long held that a plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quotation omitted).

The record reflects that at the plea hearing the Court fully apprised Sinha of the charges against him, the elements of the offense, the maximum penalty, and the burden of proof placed upon the Government. Plea Tr. [328] at 16-25. The Court fully explained the consequences of the plea to Sinha, Plea Tr. [328], and under oath Sinha and his counsel repeatedly responded that Defendant fully and completely understood, and knowingly and voluntarily agreed to, all of the terms of the Plea Agreement. *See id.* The Court inquired whether Defendant's plea was induced by promises, assurances, or threats of any kind to which he responded "No, sir." *Id.* at 12-13. Sinha concurred that he was pleading guilty of his own free will. *Id.*; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("[A] defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath.").

Based upon the foregoing, and because Sinha has not asserted any claim for

ineffective assistance of counsel which merits relief,[2] *see* discussion *infra* part D, the

Court finds that Sinha's plea was knowing, intelligent, and voluntary.

C. The factual basis presented at the plea hearing supports Sinha's guilty plea (Ground Two of the Motion).

Defendant argues that the Court did not have a proper factual basis to accept

his plea. Fed. R. Crim. P. 11(b)(3); Def.'s Mot [419] at 6. Specifically, he contends

that his attorney incorrectly proposed a modification of the factual basis at the plea

hearing. Def.'s Mot. [419] at 6. As a part of the factual basis supporting

Defendant's plea, the Government stated that patient Tonie Mattina "never met

with Dr. Sinha and therefore [she] never had any physical examination with him at

all." Plea Tr. [328] at 26.

Citing the Transcript [328] of his plea hearing, Sinha maintains that his

counsel specified that Sinha did meet with Mattina at some point, but that he did

not meet with her in the months before refilling the prescription that formed the

basis of Count 27. *Id.* at 28. Sinha's attorney specified that the failure to meet with

Mattina in those preceding months established that Sinha acted outside the scope of

professional practice. *Id.*; Def.'s Mot. [419] at 6. Defendant argues, however, that

not meeting with patient Tonie Mattina in the immediate months prior to the date

in Count 27 did not mean that his conduct fell outside the scope of professional

practice, because there was no "no federal or state law present that required a

registered physician . . . to perform a re-check physical exam on a patient prior to

---

[2] In his second ground for relief, Sinha raises claims for ineffective assistance of counsel which, if valid, would affect the validity of the guilty plea. *See* Motion [419] at 6.

authorizing a refill." Def.'s Mot. [419] at 6. Sinha goes on to assert that the "DEA regulations allow at least 6 months of refills between seeing a single patient." *Id.*; *see* Def.'s Aff. [429] at 14-15. [3]

A district court cannot enter a judgment of conviction based on a guilty plea unless it is satisfied that there is a sufficient factual basis to establish each of the essential elements of the offense charged. Fed. R. Crim. P. 11(b)(3). The district court must compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information." *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (en banc). When determining whether there is a sufficient factual basis to accept a guilty plea, inferences may be "'fairly drawn' from the evidence adduced after the acceptance of a guilty plea but before or at sentencing." *United States v. Hildebrand*, 527 F.3d 466, 475 (5th Cir. 2008) (citation omitted).

Sinha failed to raise this claim on direct appeal. *See Sinha*, 655 F. App'x; *Hildebrand*, 527 F.3d at 474 (finding that valid appeal waivers "do not bar a claim that the factual basis is insufficient to support the plea"); *United States v. Jacques-Beltran*, 326 F.3d 661, 662-63, 662 n.3 (5th Cir. 2003). "Where defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622 (citations omitted); *Wainwright v. Skyes*, 433 U.S. 71, 87-91 (1977). Actual

---

[3] Sinha has not pointed the Court to the specific regulation to which he refers, nor has he adequately cited legal authority to support his position.

innocence "means factual innocence, not mere legal sufficiency." *Bousley*, 523 U.S. at 623-24. It requires a defendant to demonstrate that in light of all of the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.*

In this case, Sinha has not shown prejudice;[4] however, even looking to the merits of the claim itself, he is not entitled to relief. Sinha argues that the factual basis did not support the third element of the charged offense, "other than for a legitimate medical purpose and in the usual course of [ ] professional practice." 21 U.S.C. § 841(a)(1); *United States v. Rosen*, 582 F.2d 1032, 1033 (5th Cir. 1978). The Controlled Substances Act does not define or create a per se rule regarding what falls within the usual course of professional practice. *See* 21 U.S.C. § 841(a)(1). Rather, what constitutes "bona fide medical practice must be determined upon consideration of evidence and attending circumstances." *Linder v. United States*, 268 U.S. 5, 18 (1925).

In aggregating the kinds of evidence which help to determine whether a physician's conduct falls outside of the scope of professional practice, the Fifth Circuit has concluded that such evidence can include lack of meaningful physical examinations at initial or follow-up visits, short visits, charging per prescription,

---

[4] Defendant has also failed to assert any ground for cause other than ineffective assistance of counsel, a claim which fails because he cannot establish prejudice. *See Bousley*, 523 U.S. at 622-24; Def.'s Mot. [419] at 6, 8. Further, Sinha has not demonstrated that in light of all of the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. In fact, he argues only that because he did not violate DEA regulations, he could not have rendered care outside the scope of professional practice. Def.'s Mot. [419] at 6.

keeping inadequate medical records, prescriptions prepared in advance, false

documentation accepted by the physician, and cash-only payment policies. *See*

*United States v. Armstrong*, 550 F.3d 382, 388-90 (5th Cir. 2008), *overruled in part*

*on other grounds United States v. Balleza*, 613 F.3d 432, 433 n.1 (5th Cir. 2010).

Violation of regulations or of clinic practices or other rules may also serve as

evidence. *See id.* Likewise, although DEA regulations may help inform what is or

is not within the scope of "professional practice," following a DEA regulation does

not per se render a defendant's conduct within the scope of "professional practice."[5]

*See Rosen*, 582 F.2d at 1036; *United States v. Collins*, 478 F.2d 268, 271-72 (5th Cir.

1973); *United States v. Prejean*, 429 F. Supp. 2d 782, 799-801 (E.D. La. 2006)

(looking to Fifth Circuit and other circuits to define usual course of professional

practice), *aff'd sub nom. Armstrong*, 550 F.3d at 382.

The record reveals that the factual basis supported Sinha's guilty plea. *See*

Plea Tr. [328]. Sinha called in prescriptions for the charged controlled substance to

a pharmacy. *Id.* at 26. Sinha's medical records were devoid of notes indicating he

ever performed a physical examination on Tonie Mattina and he failed to maintain

any record on this patient until a year after beginning to prescribe her controlled

substances.[6] *Id.* Moreover, Sinha's failure to take an appropriate medical history,

---

[5] At sentencing, the Court in fact heard argument regarding the very DEA regulation that Sinha now cites. Sentencing Tr. [366] at 286.

[6] The modification made by Sinha's counsel at the plea was not that Sinha took an extensive medical history or that he conducted sufficient physical exams of Tonie Mattina. Rather, the modification only added that he "met with her." *See* Def.'s Mot. [419] at 6. Meeting with but not conducting a thorough physical examination may fall outside the "scope of professional practice." *See Rosen*, 582 F.3d (holding physician's conduct was outside scope where physician met with patients but only took blood pressure and weight).

record the patient's medical history and conduct a physical exam, adequately assess the risks and benefits of opioid treatment, and monitor compliance with treatment, all fell outside the standard of care. *Id.* at 26-27. And failing to record a plan of treatment and not attempting any other modes of treatment or referrals to other specialists also breached the standard of care as well as state regulations.[7] *Id.* at 27.

In addition, Sinha agreed under oath at his plea hearing that when he wrote the prescription that is the subject of Count 27, he acted outside the scope of professional practice, deviated from the standard of care, and had no good faith basis for the prescription. *Id.* at 29-30. Even if addressed on the merits and construing his Motion in the light most favorable to him, the Court finds that the factual basis, even with Sinha's modification that he conducted a physical examination of Tonie Mattina at some point, but not in the months before refilling the prescription that formed the basis of Count 27, supported Sinha's guilty plea.

---

While Sinha does assert in his Affidavit [429] that he conducted a "detailed and comprehensive exam" on Tonie Mattina before prescribing her any medication, because Sinha did not request leave to amend, his Affidavit is not properly before the Court. *See United States v. Cervantes*, 132 F.3d 1106, 1110-11 (5th Cir. 1998). Even if the Court considers this Affidavit [429], the factual basis for the plea still supports the essential element that Sinha acted outside the scope of professional practice. *See* Plea Tr. [328] at 25-27 (stating additional conduct outside scope as "failure to document, failure to refer, failure to attempt treatment other than through opioid medication, failure to adequately assess the risks and benefits of opioid treatment or to monitor compliance with such treatment").

[7] The Government was prepared to introduce the expert testimony of a board-certified internist and another physician board certified in pain management who would have testified that Sinha's treatment and documentation breached the standard of care. *See* Plea Tr. [328] at 26-27.

D.    Sinha's claims of ineffective assistance of trial counsel lack merit (Ground Three of the Motion).

Defendant Sinha next asserts ineffective assistance of counsel, arguing that his attorneys failed to: (1) comprehend the governing law concerning required examinations between refills of Schedule IV medication; (2) properly investigate the facts of Count 27, Tonie Mattina, and the Government's main witnesses; (3) secure the Government's representation to limit relevant conduct to Count 27; (4) accurately estimate the sentencing guideline range; and (5) proceed to trial with exculpatory evidence.  Sinha raises two additional claims in his Affidavit [429], that: (6) his counsel was ineffective at sentencing; and (7) counsel induced his guilty plea with unkept promises.  Def.'s Aff. [429] at 8, 10.  Sinha filed this Affidavit [429] more than two months after the Government filed its Response [424] to his Petition [419], without requesting leave of the Court to amend.

Rule 15(a) of the Federal Rules of Civil Procedure permits parties to amend after a responsive pleading "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).   Because Sinha did not request leave of this Court to amend, it need not consider any additional issues or supporting indicia of reliability raised in his Affidavit [429].  *See United States v. Cervantes*, 132 F.3d 1106, 1110-11 (5th Cir. 1998) (refusing to consider affidavits filed in support of pro se litigant after Government's response to habeas petition); *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992) (refusing to consider issues raised by pro se litigant after Government's response to habeas petition).  However, even if the Court were to consider Sinha's belated Affidavit, his claims of ineffective

assistance of counsel lack merit.

1. <u>Legal standard</u>

The Sixth Amendment to the United States Constitution guarantees an accused the right to the assistance of counsel in defense of a criminal prosecution. U.S. Const. amend. VI. This right extends to the plea and the sentencing process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). Claims of ineffective assistance of counsel are properly asserted through a motion to vacate pursuant to § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 n.5 (5th Cir. 1996) (citation omitted). "[M]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998). A defendant must rely on more than bare allegations to support his claim. *United States v. Curtis,* 769 F.3d 271, 276 (5th Cir. 2014).

To succeed on a § 2255 motion asserting ineffective assistance of counsel, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Failure to establish either prong defeats the claim. *Green*, 160 F.3d at 1035. A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" and a defendant must overcome that presumption. *Strickland*, 466 U.S. at 689. "Surmounting *Strickland's* high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), because "[j]udicial scrutiny of

15

counsel's performance must be highly deferential," and attorney errors are "as likely to be utterly harmless as they are to be prejudicial," *Strickland*, 466 U.S. at 689, 693.

To demonstrate "prejudice" in the *Strickland* sense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where a defendant's claim for ineffective assistance arises out of a guilty plea, he must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To satisfy the 'prejudice' requirement the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

A defendant must "affirmatively prove prejudice," *Strickland*, 466 U.S. at 693, with more than mere speculation and conjecture, *Bradford v. Whitley*, 953 F.3d 1008, 1012 (5th Cir. 2002). He must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. The Fifth Circuit has found relevant circumstances to include the strength of the evidence against the defendant, the benefit received under the terms of the agreement relative to the defendant's sentencing exposure had he gone to trial, and the information made available to the defendant during the plea colloquy. *See, e.g., United States v. Williams,* 490 F. App'x 632, 633 (5th Cir. 2012); *United States v. Mackay,* 339 F. App'x 367, 368-69 (5th Cir. 2009); *United States v. Thompson,* 44

16

F.3d 1004, at *2 (5th Cir. 1995); *United States v. Smith,* 844 F.2d 203, 209 (5th Cir.

1988).

    2.    <u>Failure to investigate prevailing law constituting what qualifies as</u>
               <u>outside the "scope of professional practice"</u>

Sinha argues that his trial counsel was ineffective for "not fully

comprehend[ing] the governing law concerning required examinations between

refills." Def.'s Mot. [419] at 8. He claims that as a result, his attorneys provided

him "incorrect advice." Regarding what must be shown to constitute outside the

scope of professional practice, Sinha further asserts that counsel was ineffective for

incorrectly modifying the factual basis at the plea hearing, which caused him to

plead to a crime that the factual basis did not support. *See* Def.'s Mot. [419] at 6, 8.

The Government responds only that Sinha has not proved prejudice and that his

attorneys' conduct did not fall below an objective level of reasonableness.

Government's Resp. [424] at 3.

Although Sinha alleges that his attorneys misunderstood the governing law,

in fact it is Sinha who misapprehends the law, believing that adherence to a DEA

regulation meant that his actions automatically fell within the scope of professional

practice under 21 U.S.C. § 841(a)(1). *See* discussion *supra* Part II.C. There was

overwhelming evidence that Sinha prescribed controlled substances outside the

scope of professional practice, including evidence that he prescribed medication in

violation of other regulations. *See id.*; Plea Tr. [328] at 27 ("It would have been a

breach of the standard of care and the state regulations concerning prescribing

controlled substances to fail to record an appropriate history or plan or over this

17

period of time not to have attempted any other mode of treatment and/or referrals to other specialists."). Sinha relies on this unmeritorious defense to the criminal charges, which does not negate the essential elements of 21 U.S.C. § 841(a).

Because the modification did not change the fact that the factual basis, as ratified by Sinha, was sufficient to establish this essential element of the offense, it was not unreasonable for Sinha's attorneys to clarify that while Sinha had conducted a physical examination of Mattina, he had not done so in the months prior to the date charged in Count 27. It was likewise not unreasonable for counsel to not solely rely on DEA regulations when advising Sinha what kinds of conduct fell outside the scope of professional practice.[8]

Moreover, Defendant has failed to establish that counsel's alleged ineffective assistance was prejudicial. Although Sinha claims that he would not have pled guilty and continued to trial, his statement is conclusory. *See Green*, 160 F.3d at 1042-43. Sinha has not "convince[d] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. There was ample evidence of Sinha's guilt. *See id.*; Plea Tr. [328] at 25-27 (detailing the factual basis for the plea). The factual basis reflects that Defendant maintained no record of performing a physical exam on Tonie Mattina, nor did he ever take a medical history, assess the risks and benefits of opioid treatment,

---

[8] Sinha makes the conclusory assertion that his counsel incorrectly advised him regarding what constituted outside the scope of professional practice. Although Sinha does not elaborate, because he claims that counsel "did not fully comprehend the governing law concerning required examinations between refills," and given Sinha's lengthy discussion of and reliance on DEA regulations, Sinha presumably is contending that counsel failed by not explaining the cited DEA regulation to him.

consider other modes of treatment, or monitor compliance. Plea Tr. [328] at 26-27.

Sinha also received a significant benefit under the Plea Agreement [291]. Under its terms, the Government agreed to dismiss thirty-nine (39) counts of the Third Superseding Indictment [254]. By agreeing to the terms of the Plea Agreement, Sinha pled guilty to a single count of the Third Superseding Indictment and significantly reduced his sentencing exposure. The Court inquired further to confirm that the factual basis, with Sinha's modification, supported the Count to which he pled. Plea Tr. [328] at 29. And the Court ensured that Sinha was in fact pleading to the facts alleged. *Id.* at 29-30. Finally, a defense that he followed a DEA regulation would not have been meritorious at trial. Sinha has failed to demonstrate that his counsel's conduct fell below an objective standard of reasonableness, or that counsel's ineffective assistance was prejudicial.

3.   Failure to properly investigate

Sinha next contends that his attorneys failed to properly investigate the facts underlying Count 27, Tonie Mattina, and the Government's main witnesses. Def.'s Mot. [419] at 8. He alleges that if he "was properly advised and his counsel did not perform deficiently, he would never have pled 'guilty' and would have proceeded to a jury trial." *Id.* The allegations in Sinha's Motion [419] on this point are vague and conclusory and are thus insufficient to support this claim. *See Curtis*, 769 F.3d at 276. Although the Court need not consider Sinha's Affidavit [429],[9] reading his

---

[9] As the Court has previously noted, it need not consider Sinha's Affidavit because it was filed after the Government's Response without requesting leave of Court to amend. *See* Fed. R. Civ. P. 15.

Motion [419] and his unsworn Affidavit [429] together, Sinha appears to suggest that if his attorneys had properly investigated the facts surrounding his care of Tonie Mattina and the facts involving Count 27, they would have discovered that he did act within the scope of professional practice when dealing with Tonie Mattina because he acted in good faith, conducted a "detailed and comprehensive evaluation," and conducted "telemedicine conferences" with Mattina before authorizing the refill that is the subject of Count 27. Def.'s Aff. [429] at 14-15.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. When a defendant claims that counsel should have interviewed or produced a witness, the defendant must show that the witness' testimony, if offered, would have been exculpatory. *Id.* If a defendant raises a failure to investigate claim, the defendant "must allege with specificity what the investigation would have revealed and how it would have benefitted him." *United States v. Glinsey,* 209 F.3d 386, 393 (5th Cir. 2000) (citing *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989)).

"If the petitioner claims that counsel erred by failing to investigate or discover certain exculpatory evidence, the prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding the guilty plea." *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1985). This "depend[s] in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59. Sinha must

demonstrate "that going to trial . . . would have given him a reasonable chance of obtaining a more favorable result." *United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018) (citations omitted).

In making this assessment, courts look to the totality of the circumstances. *Id.* The Fifth Circuit has set forth a non-exhaustive list of relevant factors, including:

> (1) the defendant's "evidence to support his assertion" that he would have gone to trial had he known the [the relevant circumstances]; (2) "his likelihood of success at trial"; (3) "the risks [he] would have faced at trial"; (4) his "representations about his desire to retract his plea"; . . . and (6) "the district court's admonishments."

*United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014) (quoting *United States v. Batamula*, 823 F.2d 237, 241 n.4 (2016)).

Looking to the totality of the circumstances, Sinha was not prejudiced by his attorneys' alleged failure to investigate his care of Tonie Mattina, the facts surrounding Count 27, and the Government's main witnesses. Other than his own sworn statements, Sinha does not point to any additional evidence that would have supported his asserted defense. *See id.* In fact, Sinha in his own Affidavit [429] fails to allege that he ever kept records of any physical exam that he performed on Tonie Mattina,[10] that he ever considered other modes of treatment or referrals for

---

[10] Sinha does contend generally that he completed thorough patient exams, yet he neither points to nor produces any evidence of this other than his own statements and Exhibit "E" to his Affidavit [429]. Exhibit "E" appears to be an interview of a previous patient of Sinha. This patient indicates that Sinha took an extensive history and performed physical exams each time he treated him. The only explanation Sinha provides for Exhibit "E" is that it is a "true picture" of how he "evaluated all of [his] patients." Def.'s Aff. [429] at 9. Sinha offers no explanation regarding who produced Exhibit "E" or where it came from. *See id.*

any patients, or that he recorded his patients' medical histories. *See generally* Def.'s Aff. [429].

In addition, Sinha's sworn testimony before the Court at his plea hearing contradicts the assertions in his Affidavit [429]. The Court inquired whether Sinha agreed with the factual basis presented by the Government at the plea hearing, subject to the one modification made by attorney Smith. Plea Tr. [328] at 28-29. Defendant replied: "Subject to what my attorney said, yes, sir, Your Honor."[11] *Id.* at 29. The factual basis stated that Sinha did not keep records of any physical exam he performed on Tonie Mattina and that he failed to keep any medical records until June 2009, a year after he began prescribing medication to her. *Id.* at 26. Sinha also concurred under oath that he breached the standard of care in pain management when he failed to document, refer, attempt other treatment other than through opioid medication, adequately assess risks and benefits, and monitor compliance. *Id.* at 27.

While Defendant alleges that he would have proceeded to trial, the evidence to which he directs the Court consists of nothing more than his own conclusory statements. Defendant has not demonstrated that he was likely to succeed at trial. As the Court has discussed, there was significant evidence against Sinha and he

---

[11] The Court was exhaustive in ensuring that Sinha agreed with the facts presented in the factual basis. After confirming that the modification was consistent with the factual basis, the Court again inquired: "So you agree that whatever may have happened before that time, at the time you wrote this prescription in Count 27, that was outside the scope of professional practice and did deviate from the standard of care. You admit that?" Plea Tr. [328] at 29-30. Again, Sinha proclaimed, "Yes, sir, Your Honor." *Id.* at 30. The Court then inquired whether there was anything Defendant did not understand or that he wished to discuss with his attorney. *Id.* Sinha replied, "No. Thank you, Your Honor." *Id.*

has failed to point to any evidence, other than his own assertions, that would support his defense. Further, Sinha faced a total of forty counts and drastically more time in prison had he proceeded to trial. Accordingly, Defendant has not carried his burden of establishing prejudice. *See Batamula*, 823 F.3d at 241.

4.  Failure to proceed to trial with exculpatory evidence

Sinha claims that his attorneys failed to proceed to trial with exculpatory evidence. Def.'s Mot. [419] at 6. This conclusory, bare allegation is insufficient to support his claims. *See Curtis*, 769 F.3d at 276. Even looking to his Affidavit [429], Sinha appears to be arguing that this exculpatory evidence consisted of medical records for patients who were named in the indictment. *See* Def.'s Aff. [429] at 16. Defendant claims that following his plea, but before his sentencing, he obtained these medical records.[12] *Id.* To the extent Sinha is arguing that his attorneys failed to continue to trial at this juncture, his claim of ineffective assistance fails. Because Sinha had already entered his guilty plea before the Court, he cannot prove that his attorneys' conduct fell below an objective standard of reasonableness or that counsel's ineffective assistance was prejudicial in not proceeding to trial when in fact he had pled guilty.[13]

---

[12] Bewilderingly, Sinha then states that the authenticity of these medical records is detailed in paragraphs 33 and 34 of his Affidavit, which discusses only medical records which were obtained in advance of his plea, and in his "Response to Counsel's Affidavits," which Sinha never filed with the Court. *See* Def.'s Aff. [429].

[13] Moreover, Sinha's counsel brought at least a portion of these medical records before the Court at sentencing, and the Court found that they were manufactured. Sentencing Tr. [367] at 315-23, 332. In fact, the Court found that their fabrication and presentment to the Court merited a two-level enhancement under the Sentencing Guidelines for obstruction of justice. *Id.* at 332-33.

5.   Failure to advise regarding the basis to render a knowing and intelligent plea

Defendant contends that his counsel failed to properly advise him sufficiently in order for him to enter a knowing and intelligent plea. Def.'s Mot. [419] at 8. Sinha offers no more than bare allegations to support this claim. *See Curtis*, 769 F.3d at 276. At the plea hearing the Court admonished Defendant fully of his rights and of the basis on which he must render a knowing and intelligent plea. *See* Plea Tr. [328]. Pursuant to Federal Rule of Criminal Procedure 11, the Court determined that Sinha understood the nature of the charge, the waiver of his rights at trial and on appeal, and his right to plead not guilty, among others. *See id.*; Fed. R. Crim. P. 11(b). Defendant cannot show prejudice in his regard.

6.   Failure to properly estimate the guideline range

Sinha asserts that his counsel provided ineffective assistance when his attorneys "failed to calculate [an] accurate estimate of the guideline range." Mot. [419] at 7. In his Affidavit [429], Sinha claims that attorney Smith told him "no way you'll get five years," that the law firm could "get [him] in the 6-10 month range," and that if he proceeded to trial, he would "not get out until 70 years of age." Def.'s Aff. [429] at 10. The Court ultimately sentenced Sinha to five years imprisonment. While Sinha's conclusory allegation in his Motion [419] is insufficient to raise a constitutional issue, even if the Court looks to Sinha's untimely Affidavit [429] and evaluates the merits, Sinha has plainly failed to establish prejudice.

When a defendant "lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court." *Teague v. Scott,* 60 F.3d 1167, 1171 (5th Cir. 1995). However, "a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed." *Daniel v. Cockrell*, 283 F.3d 697 F.3d 697, 703 (5th Cir. 2002), abrogated on other grounds *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004). "As long as the defendant understood the term of imprisonment to which he might possibly be sentenced, he was aware of the plea's consequences." *United States v. Tamayo*, 502 F. App'x 404, 405 (5th Cir. 2012) (citing *United States v. Santa Lucia*, 991 F.3d 179, 180 (5th Cir. 1993)). Nevertheless, "[b]y grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." *Grammas*, 376 F.3d at 436-37 (5th Cir. 2004) (citation omitted).

Sinha has not established that his attorneys grossly underestimated his sentencing exposure. Counsel's purported statement that he "would get [him] in the 6-10 month range," did not reflect Sinha's sentencing exposure, of which the Court clearly advised Sinha.[14] Def.'s Aff. [429] at 10. Sinha acknowledged under oath that he understood the maximum statutory penalty was five years imprisonment,

---

[14] To the extent that this and his attorney's statement that he would "never get five years" can be construed as a promise, the Court has considered and rejected Sinha's claim that he was induced by defense counsel's unkept promises. *See* discussion *infra* subpart II.D.(9.).

and that the Court's sentence might be different from any estimate his attorney had given him. Plea Tr. [328] at 18-20. The Court very plainly and clearly explained the maximum sentence Sinha faced and that it could impose a sentence more severe than the one he anticipated. *Id.* Additionally, the Plea Agreement, which Sinha acknowledged under oath that he understood, states that "Defendant is not relying upon anyone's calculation of a particular Guideline range for the offense . . . recognizes that the Court will make the final determination of the sentence and that the Defendant may be sentenced up to the maximum penalties [for the offense]." Plea Agreement [291] at 2.

Sinha has failed to establish prejudice. While "any additional time in prison has constitutional significance," proceeding to trial would not have reduced Sinha's sentence. *See Grammas*, 376 F.3d at 438 (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). Had Sinha been found guilty of more than one count of the forty-count indictment he faced, he likely faced significantly more exposure and likely would have received a sentence in excess of the five-year maximum cap on the single count to which he pled.

7. Failure to limit relevant conduct

Defendant argues that he was deprived of effective assistance of counsel when his attorneys failed "to secure the Government's representation to limit 'relevant conduct' to [the] count of the conviction." Def.'s Mot. [419] at 8. Sinha's Motion [419] is devoid of any further argument on this point.[15]

---

[15] In his Affidavit [429], Sinha actually contradicts this claim stating that the Government and his attorneys assured him that the Government would limit the drug quantity to the

Sinha's allegation is conclusory and thus insufficient to support his claim. *See Curtis*, 769 F.3d at 276. Moreover, Sinha has failed to establish prejudice. In fact, he chose to plead to Count 27 without any such concession by the Government. *See* Plea Agreement [291]; Plea Supplement [292]; Plea Tr. 328. He also has not convinced the Court that the Government would have been willing to agree to or offer a plea that included such a limitation on relevant conduct. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012) (holding that to show prejudice of an offer that was not communicated, a defendant must "demonstrate a reasonable probability both that [he] would have accepted the more favorable plea offer had [he] been afforded effective assistance of counsel and that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it").

The record supports the conclusion that the Government likely would not have agreed to this restriction. At the plea hearing, the Government stated that the agreement reached was "essentially what was discussed . . . all along," and that the executed Plea Agreement [291] was the only "formal plea agreement that has been exchanged with defense counsel." Plea Tr. [328] at 10. Sinha has thus failed to establish prejudice in this regard.

8.  Ineffective assistance at sentencing

Sinha asserts that he was deprived of effective assistance of counsel at sentencing when his attorneys failed to "interview the [G]overnment's main witnesses who all committed perjury at sentencing." Def.'s Mot. [419] at 8. This

---

Count of the conviction. Def.'s Aff. [429] at 10.

allegation is also conclusory and is insufficient to raise a constitutional issue. *See Curtis*, 769 F.3d at 276; *United States v. Holmes*, 406 F.3d 337, 361 (5th Cir. 2005). Within his Affidavit [429], Defendant further claims that his attorneys failed to put on "defense rebuttals" to the witness' purported perjury,[16] Def.'s Aff. [429] at 16, and argues that his attorney "never really did anything but submit a partial list of some prescriptions that he described as 'not relevant conduct,'" Def.'s Aff. [429] at 15. Even considering the claims in Sinha's Affidavit [429], he has failed to establish a claim under *Strickland*.

Sinha does not point to a single piece of evidence or a single citation in the record to support this claim.[17]   The record is not only devoid of any evidence to support this claim but, actually contradicts it.  Although the Court was not persuaded by it, defense counsel submitted extensive, well-supported objections to the Pre-Sentence Investigation Report (Sealed).  Def.'s Objs. (Sealed) [345-3] to PSR.  The sentencing took place over two days, *see* Minute Entry, October 26, 2015; Minute Entry, October 27, 2015, during which Sinha's attorneys cross-examined every witness called by the Government and attempted to impeach many with documentary evidence offered into the record, Sentencing Tr. [365].  In support of their objections, counsel also put forth their own physician witness to testify to the

---

[16] Sinha baldly alleges that "there were voluminous contradictions and lies that amount to perjury" regarding the testimony of John Mattina, Tonie Mattina, Glen Hopkins, and Shasta Crowe, but offers nothing beyond his own assertion. *Id.* at 4.
[17] While Defendant offers two exhibits to support this claim, Exhibits "I" and "J" to his Affidavit [429] do not include any evidence and are only emails written by Sinha to his attorneys regarding his own beliefs and actions. *See* Def.'s Aff. [429-9] [429-10].

standard of care, *id.* at 220, and the testimony of a receptionist from Sinha's previous employment with a family medical practice, *id.* at 259.[18]

Sinha's counsel also entered additional significant documentary rebuttal evidence.[19] Sentencing Tr. [366]. Counsel vehemently argued against the inclusion of every prescription written by Sinha as relevant conduct, and for application of a decrease for acceptance of responsibility. *Id.* at 276-84, 294-96; *see generally id.* Counsel further submitted a well-reasoned Motion [330] [331] for a Downward Departure and/or Variance and fervently argued for it before the Court at sentencing.[20] *Id.* at 300-05, 308-09; Mot. for Downward Departure and/or Variance [330]; Mem. [331] in Support of Mot. [330]. Sinha has failed to demonstrate either prong of *Strickland* as to this claim.

9.  Plea induced by unkept promises

Sinha raises for the first time in his Affidavit an additional claim that his guilty plea was induced by defense counsel and the Government's unkept promises. Def.'s Aff. [429] at 10. He did not advance this claim in his Motion [419], and because he has not requested leave to amend, this claim is not properly before the Court; however, even on the merits, this claim fails. *See Cervantes*, 132 F.3d at

---

[18] Sinha's attorneys also offered as rebuttal the testimony of an investigator who stated that he had contacted one of the Government's witnesses, Tr. [365] at 254, but the witness did not wish to speak with him.

[19] This included: evidence to support Sinha's claim that he paid a clinic back for their attempt to retain a DEA license for him, Sentencing Tr. [366] at 272-73; evidence to support Sinha's claim that he attempted to retrieve medical records discovered immediately prior to sentencing, which the Court found to be manufactured, *id.* at 273-74; and evidence of Sinha's mental health, *id.* at 273-74.

[20] In support of Sinha's character, counsel offered the statements in open court of four additional people. *See* Sentencing Tr. [366] at 349-58.

1110-11 (holding that district court did not abuse its discretion in refusing to consider an affidavit which was filed after the Government's response to a defendant's § 2255 motion).

Defendant alleges that his attorney Christopher E. Smith told him that the Government made three assurances: "(1) They would not object to any mitigation or acceptance of responsiblity [sic] credit for pleading guilty; (2) They would limit the drug quantity to the count of conviction; [and] (3) They would respect any recovered medical records as exculpatory evidence." Def.'s Aff. [429] at 10.

Where a guilty plea is induced by defense counsel's unkept promises, it may be invalid as not knowing and voluntary. *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989). But, "a defendant ordinarily will not be heard to refute h[is] testimony given at a plea hearing while under oath." *Cervantes*, 132 F.3d at 1110 (citing *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985)). "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id.* (citing *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977)).

A defendant may seek habeas relief on the basis of alleged promises, even where inconsistent with sworn testimony, where he proves: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* If a defendant can produce independent indicia of the merit of his allegations, he is entitled to an evidentiary hearing; but, if defendant's showing is "inconsistent with the bulk of

[his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.*; *see United States v. Smith*, 844 F.2d 203, 208 (5th Cir. 1988).

The written Plea Agreement [291] and Plea Supplement [292], as well as Sinha's testimony under oath at the Plea Hearing [328], belie his claims that the guilty plea was induced by any unkept promises. The written Plea Agreement, signed by Sinha and his attorney, stated that Sinha understood that the "plea agreement and the plea supplement completely reflects [sic] all promises, agreements and conditions made by and between the [Government] and Defendant." Plea Agreement [291]. Defendant's Plea Supplement, also signed by Sinha and his attorney, provided that the Government had no other obligation other than to dismiss the remaining Counts and to recommend a sentence in the lower 50% of the guideline range.[21] Plea Supplement (Sealed) [292] at 2. The Agreement also stated that Sinha understood that the Court was not required to accept the Government's recommendation and could sentence Defendant to the maximum fine and imprisonment as provided by law. *Id.* Within the Plea Supplement, the Government agreed that if Sinha qualified for a decrease for acceptance of responsibility, the United States Attorney "will move for an additional one-level decrease in the [guideline range] in accordance with [the sentencing guidelines.]" *Id.*

At the plea hearing, the Court reiterated what was set forth in the Plea

---

[21] The calculated guideline range fell above the statutory maximum sentence for the Count to which Sinha pled. Presentence Investigation Rep. (Sealed) [345] at 33.

Agreement, and specifically asked Sinha whether anyone had made any "different promises or assurances of any kind" other than those in the Plea Agreement and Supplement "in an effort to induce you to plead guilty in this case." Plea Tr. [328] at 12. Defendant responded, "No, sir," and acknowledged in response to a follow-up question that he was pleading guilty of his own free will. *Id.* Sinha represented to the Court under oath that he had read and understood the entire Plea Agreement, agreed with its provisions, consulted his attorney, and had not been induced to sign the Agreement by any other promises or assurances. *Id.* Before entering his plea, Sinha confirmed his understanding that he would not be permitted to withdraw his guilty plea even though the sentence might be harsher than he expected. *Id.*

Sinha's assertions in his § 2255 Motion are contradicted by his statements under oath during the guilty plea colloquy and by the unambiguous written terms of his Plea Agreement. Sinha testified under oath at his change of plea hearing, after these supposed promises were made, that no one had made any promises or assurances of any kind to him in an effort to induce him to plead guilty. Plea Tr. [328] at 12. Instead, Sinha admitted that he was pleading guilty of his own free will because he was in fact guilty. *Id.* His own sworn statements clearly refute his contention that counsel made other promises or assurances to him regarding his sentence, or that counsel somehow coerced or induced him to plead guilty. Finally, Sinha has not produced any of the requisite independent indicia of reliability to overcome the strong presumption of verity of his statements under oath. *See Cervantes*, 132 F.3d at 1110-11. Sinha's arguments on this point are wholly without

merit. *See id.*; *Soliz,* 359 F. App'x at 471.  For this reason, no evidentiary hearing is necessary.

E.    Sinha's claims of ineffective assistance of appellate counsel lack merit (Ground Four of the Motion).

Sinha's next claim is that he was deprived of a true bill[22] because the indictment lacked "the essential element of the requisite language 'without a legitimate medical purpose'"; because of perjured testimony before the grand jury; and because he was erroneously subjected to a civil standard for a criminal statute. Mot. [419] at 8.  While these are not proper collateral attacks on the sentence, he asserts in his supporting Affidavit [429] that these arguments should be construed as ones for ineffective assistance of counsel for failure of his appellate counsel to raise them on direct appeal.  Def.'s Aff. [429] at 17.  Even if the Court considers these claims on their merits, Sinha has failed to establish that his appellate counsel's conduct fell below an objective standard of reasonableness or that he was prejudiced.

Sinha's counsel in fact argued on direct appeal to the Fifth Circuit that the indictment lacked an essential element of the offense.    Br. for Petitioner at 24, *Sinha*, 655 F. App'x at 1015 (No. 15-60784).  Despite Sinha's arguments to the contrary, the Fifth Circuit declined to overturn its own precedent and upheld its decision in *United States v. Fuchs*, 467 F.3d 889 (5th Cir. 2006).  *United States v. Sinha*, 655 F. App'x at 1016-17.  In *Fuchs*, a defendant pharmacist argued that the

---

[22] Sinha asserts that he was "deprived of a 'true probable cause' for the alleged offense." Mot. [419] at 8.

Government had to prove that he dispensed a controlled substance without a legitimate medical purpose. *Fuchs*, 467 F.3d at 899. The Fifth Circuit held that an indictment does not need to include any reference to "legitimate medical purpose" and that medical professionals can be prosecuted under 21 U.S.C. § 841 when their activities fall outside the usual course of practice. *Id.* at 899-901 (citing *United States v. Moore*, 423 U.S. 122, 124 (1975)). Sinha's argument is foreclosed by precedent.

Next, Sinha argues that the agent who testified before the grand jury committed perjury by "stating that [he] did not perform any physical exams on any of his patients." Mot. [419] at 8. Sinha asserts that the agent later testified at his sentencing that he did in fact perform physical exams on patients. *Id.* Sinha further contends that he performed exams on Tonie Mattina and that proof of those exams exists in patient files that he was unable to recover. *See* Def.'s Aff. [429] at 14-15.

Challenges to the sufficiency of the indictment are waived by the guilty plea unless the factual basis presented to the Court contradicts an essential element of the offense. *United States v. Jacquez-Beltran*, 326 F.3d 661, 662-63 (5th Cir. 2003) (distinguishing *United States v. Spruill*, 292 F.3d 207, 215 (5th Cir. 2002)). Here, the factual basis for the plea did not contradict an essential element of the offense and Sinha's argument is thus waived. *See id.*; discussion *infra* Part II.C. However, even considering this claim on the merits, it fails.

The Fifth Circuit has cautioned that after indictment, the judiciary's role in

policing the credibility of witnesses before a grand jury is minimal, but it has held

that a court, on occasion, must use its supervisory power to safeguard the integrity

of the grand jury process.  *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir.

2002).  Where the Government presents false testimony to the grand jury, the

indictment may be dismissed only if the testimony was knowingly sponsored by the

Government and was material to the decision to indict.  *Id.* at 773-74; *see also*

*United States v. Forte*, No. 01-21216, 2003 WL 1922910, at *6 (5th Cir. Mar. 24,

2003). The Fifth Circuit has refused to adopt the proposition that, absent perjury or

Government misconduct, an indictment is flawed simply because it is based on

testimony that may later prove to be questionable.  *United States v. Cessa*, 861 F.3d

121, 142 (5th Cir. 2017).

In the absence of a finding of Government misconduct, the Fifth Circuit has

While Sinha has alleged that the testifying agent gave inconsistent testimony

at sentencing, he has neither demonstrated that any witness committed perjury

before the grand jury, nor that any such alleged false statement was material to the

grand jury's decision to indict.  *See* 18 U.S.C. § 1623 (false declarations before grand

jury or court).  There is no evidence in the record to support Sinha's allegations

other than his own conclusory statements.  *See generally* Sentencing Tr. [365] [366].

Even if a material, false statement was made to the grand jury, Sinha has not

shown that it was knowingly sponsored by the Government.

In the absence of a finding of Government misconduct, the Fifth Circuit has

held that a district court is without authority to exercise its limited supervisory

power to dismiss an indictment on the basis of perjury before the grand jury.

*Strouse*, 286 F.3d at 772.  The mere fact that evidence itself is unreliable is not sufficient to require dismissal of the indictment.  *Id.* at 773.  Accordingly, a court's supervisory reach only extends to cases where the Government knew of any false declaration before the grand jury in violation of 18 U.S.C. § 1623 at the time of the perjured testimony.  *Id.*  Defendant has not shown any Government misconduct.  Because this was not a meritorious ground for appeal, appellate counsel was not ineffective for failing to raise it.  *See Strickland*, 466 U.S. at 687-88.

Sinha also asserts that he was incorrectly subjected to a civil standard for a criminal statute before the grand jury, but he does not elaborate upon this argument either in his Motion [419] or within his supporting Affidavit [429].  The Court construes this claim as contending that the grand jury was not properly charged and failed to find him guilty beyond a reasonable doubt.  Mot. [419] at 9.  However, the grand jury need not find him guilty beyond a reasonable doubt.  Rather, the Supreme Court has long recognized that the grand jury's singular role is finding the *probable cause* necessary to initiate prosecution for a serious crime.  *Kaley v. United States*, 571 U.S. 320, 329 (2014).  Here, the grand jury properly returned an indictment based upon a showing of probable of cause.  *See* Third Superseding Indictment [254].  As such, Sinha was subjected to the correct standard.

F.  <u>Sinha was not deprived of his Sixth Amendment Right to Counsel of Choice when he chose to obtain new counsel rather than proceed to trial with the attorneys he retained (Ground One of the Motion).</u>

Sinha maintains that he was deprived of his counsel of choice when he

elected to obtain new counsel rather than proceed to trial with the attorneys he had retained. Def.'s Mot. [419] at 4. Sinha argues that the Court's presentation of this choice amounted to a Sixth Amendment violation of his right to counsel of his choice. *Id.* He explains that because his attorneys indicated that they would be rendered ineffective if they continued to trial, he was "forced . . . to choose." *Id.*

Sinha failed to raise this issue on direct appeal. A defendant procedurally defaults a claim when he fails to raise it on direct appeal and thus may only raise the claim in a § 2255 motion if he can demonstrate "(1) cause and prejudice, or (2) that he is 'actually innocent' of the crime for which he was convicted." *United States v. Sorrells*, 145 F.3d 744, 749 (5th Cir. 1998). Sinha has not asserted that he is actually innocent of the crime for which he was convicted. However, to the extent that Sinha may be arguing that his appellate counsel failed to appeal the Court's denial of the continuance and the deprivation of his right to counsel of choice[23] as a reason why this issue was not raised on appeal, the Court finds that given the procedural posture of the case and the record, it was reasonable for appellate counsel to decline to pursue this non-meritorious ground for appeal. As such, Sinha was not prejudiced and may not raise this claim in his § 2255 motion.

1. Defendant's former counsel requested a continuance the eve of voir dire.

The record reflects that the Court granted numerous continuances to trial counsel throughout the pendency of this case. On March 20, 2014, the Court

---

[23] Defendant states in his Affidavit that he had apprised appellate counsel of the choice the Court gave him and that while he was not aware of the Sixth Amendment right to choice of counsel, appellate counsel failed to raise it on appeal. Def.'s Aff. [429] at 17. Further, Defendant asserts that all of his claims relate to ineffective assistance of counsel. *Id.*

initially appointed Michael Fondren as Criminal Justice Act ("CJA") counsel for Defendant, Order [42], and shortly after on April 14, 2014, granted Sinha's first request for a continuance, Text Order, April 14, 2014. Defendant then retained attorneys Alper and Weintraub who were admitted pro hac vice on May 13, 2014. Text Order, May 13, 2014. At their request, on June 2, 2014, the Court granted Sinha another continuance. Text Order, June 2, 2014.

On August 11, 2014, Sinha's retained counsel requested that the Court continue his September 8, 2014, jury trial. Def.'s Mot. to Continue [70]. After reviewing Sinha's Motion [70] and hearing from counsel, the Court found that a continuance until February 2015 was unnecessary but offered counsel the option to continue the case until either November or December 2014. Tr. [369] at 4-10. Indicating that he would prefer to "not burden [the Court] with another motion," counsel chose to set the trial for December. *Id.* at 9-10. Thus, the Court granted a three-month continuance in order to allow defense counsel sufficient time to inspect discovery and prepare for trial, setting it for December 8, 2014. *See* Text Order, August 20, 2014; Tr. [369].

Defendant then filed a fourth request that the Court continue the trial until February 2015 or a later date. Motion [138] at 1. Finding that the grounds set forth in Defendant's Motion [138] were not sufficient to further delay the trial given the public's interest in speedy trials and the number of continuances the Court had already granted, the Court denied Sinha's Motion [138]. Order [140] at 2. At the pretrial conference held November 25, 2014, Defendant again asked for a

continuance.  Tr. [372] at 19.  In refusing to entertain the request, the Court noted the number of continuances that had been granted, and the over six months that retained counsel had had to prepare.  *Id.* at 34.  On December 8, 2014, the morning the trial itself was scheduled to commence, with the jury panel in the courthouse and voir dire ready to begin, Sinha again requested a continuance.  Tr. [373] at 3-5. Defendant's attorney Weintraub testified that if he continued to trial that he would be ineffective.  *Id.* at 6.

The Court cautioned Sinha's attorneys that if they believed they were being ineffective, they should withdraw.  Tr. [373] at 9.  The Court added that if they did, Sinha would need to find new counsel and the Court would then grant a continuance.  *Id.*  Attorney Weintraub asked to confer with Sinha.  *Id.*  After consulting with Sinha, attorney Rafferty informed the Court that Sinha wished for them to withdraw as counsel, be provided 30 days to obtain new counsel, and be granted a continuance.  *Id.*  The Court questioned Sinha under oath if this was in fact his desire and he responded in the affirmative.  *Id.* 9-11.

The Court then granted Sinha 30 days to retain new counsel.  *Id.*  Sinha chose to retain attorneys Smith and Holder to represent him, and the Court granted an almost three-month continuance.  Minute Entry, January 13, 2015.  The Court granted an additional three-month continuance on April 10, 2015.  Text Order, April 10, 2015. Thus, Sinha and his attorneys collectively had over a year to prepare for trial.

2.   The Court did not abuse its discretion denying a continuance to Sinha.

Motions to continue are within the sound discretion of this Court and decisions regarding them are subject to a clear abuse of discretion resulting in serious prejudice standard of review. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). Whether a refusal to grant a continuance was justified depends upon the circumstances of the particular case. *United States v. Messervey*, 317 F.3d 457, 462 (5th Cir. 2002) (citing *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976)). Reviewing courts consider: "the amount of time available for preparation; defendant's role in shortening the time needed; the likelihood of prejudice from denial; and the availability of discovery from the prosecution." *Id.*

The Court's denial of Sinha's motion to continue trial was warranted under the circumstances. The Court cited its earlier rulings both granting and denying Defendant's motions to continue, the number of attorneys Sinha had working on his case, counsel's earlier assurances that the time provided by the Court was adequate to prepare, and the public's right to the prompt administration of justice. *Id.* at 9.

Sinha was arrested in this case on March 4, 2014. Minute Entry, March 4, 2014. Nine months and numerous continuances later, on December 8, 2014, and with voir dire about to commence, Sinha's initial chosen counsel sought yet another continuance. Tr. [373] at 9-10. By this time, counsel had had more than adequate time to prepare a defense. The Government was forthcoming with discovery, making it available to Sinha shortly after receiving documents it requested from third parties. *See* Tr. [272] at 27-35. In addition, Sinha has not shown prejudice.

Sinha was later granted a continuance once his attorneys withdrew. To the extent the prejudice Sinha asserts is the deprivation of his counsel of choice, the Court addresses this issue below.

3. <u>The Court did not deny Sinha his Sixth Amendment right to choice of counsel where counsel, who had more than adequate time to prepare, testified that they would nevertheless be ineffective.</u>

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144 (2006). The Supreme Court has held that the right to counsel of choice is a "structural error" not subject to harmless-error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150-52 (2006). "If a defendant is erroneously denied the counsel of his choice, it is a structural error in the trial that brings into question the voluntary and intelligent character of the guilty plea itself," foreclosing application of any waiver in a plea agreement. *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008).

However, "[t]he Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." *Wheat v. United States,* 486 U.S. 153, 164 (1988). Defendants do not have the right to an advocate who is not a member of the bar, who has an actual or potential conflict, or whom he cannot afford. *See id.* Trial courts have "wide latitude in balancing the right to counsel of choice against

the needs of fairness and against the demands of its trial calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted). "The court has, moreover, an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Id.* (quoting *Wheat*, 486 U.S. at 160). In *McMann v. Richardson*, the Supreme Court admonished trial courts that "if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and [ ] judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

Sinha was not deprived of his counsel of choice. The Court did not disqualify Sinha's attorneys, nor did the Court disallow him from substituting counsel. Rather, concerned with whether Defendant was receiving effective assistance of counsel in light of the extensive amount of time his attorneys had had to prepare, the Court advised his attorneys that they should withdraw if they believed they would render ineffective assistance.

Further, Sinha was not entitled to ineffective assistance of counsel. While Sinha had a Sixth Amendment right to counsel of his choice, his right was circumscribed by the needs of fairness and the Court's interest in ensuring the ethical standards of the profession. *See Gonzalez-Lopez*, 548 U.S. at 152; *McMann*, 397 U.S. at 771. The unique circumstances of this case necessitated the Court's statement to Sinha and his attorneys. Despite more than "reasonable time

necessary for effective preparation, taking into account the exercise of due diligence," 18 U.S.C. § 3161(h)(7), attorneys Weintraub, Rafferty, and Alper, indicated that they would nevertheless provide ineffective assistance, *see* Tr. [373].

Cognizant of the Supreme Court's admonition that the Court should strive to ensure that counsel does not perform ineffectively, the Court cautioned Sinha's attorneys that if they believed they were being ineffective despite more than adequate time to prepare a defense, they should withdraw. Tr. [373] at 9. After conferring with their client, attorneys Rafferty, Weintraub, and Alper chose to withdraw. Fairness to both the just administration of justice and to Defendant necessitated the Court's actions. *See Gonzalez-Lopez*, 548 U.S. at 152.

Sinha's right to counsel of choice was not absolute. *See Wheat,* 486 U.S. at 164. He was not entitled to an attorney whom he could not afford or to conflict-ridden assistance, *id.*; however, he was entitled to effective assistance, *Strickland*, 466 U.S. at 686. The Court's approach furthered its interest in ensuring that legal proceedings before it appeared fair to observers and safeguarded Sinha's right to effective assistance. *See Gonzalez-Lopez*, 548 U.S. at 152; *McMann*, 397 U.S. at 771. The Court weighed Sinha's interest in effective assistance of cousel against that of being represented by his counsel of choice. Given the extended and lengthy period his prior counsel had had to prepare in light of the case's complexity and the attorneys' representation to the court that they could not provide competent assistance, the countervailing interest of effective assistance demanded the Court take the action it did. Defendant has failed to establish grounds which entitle him

to relief.

G.    <u>Evidentiary Hearing</u>

Defendant has requested an evidentiary hearing.  *See* Def.'s Mot. [419] at 14.
The Court finds that a hearing is not required.  A defendant is only entitled to an
evidentiary hearing on his § 2255 motion if he has presented "independent indicia of
the likely merit of [his] allegations."  *United States v. Reed*, 719 F.3d 369, 373 (5th
Cir. 2013) (citation omitted).  Because Defendant has not done so in the Court's
view, his request for an evidentiary hearing will be denied.

III. <u>CONCLUSION</u>

Because the Motion, files, and records conclusively show that Defendant is
entitled to no relief, the Court finds that Defendant's Motion [419] to Vacate, Set
Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28
U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant
Sanjay Sinha's Motion [419] to Vacate, Set Aside, or Correct Sentence by a Person
in Federal Custody, filed pursuant to § 2255, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 1st day of April, 2020.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE
